IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER D. JONES,

    PLAINTIFF,

V.

CASE NO.:_____

BRIAN FOSTER, TONI MELI, SERGEANTS
STOUGHTON, BOZACK, MANTHEI, SANCHEZ,
CORRECTIONAL OFFICERS KROLL, KIBBEL AND
LOCKHART, CAPTAIN BAUER, HSU MANAGER N.
WHITE, FOOD SERVICE ADMINISTRATOR WILLSON
AND KRUEGER, AND CHEF BRENDA,

    DEFENDANTS.

PRELIMINARY STATEMENT

This is a civil rights act complaint filed by Christopher D. Jones, a state prison inmate for monetary damages, injunctive, and declaratory relief and whatever other relief that the district court deems is warranted pursuant to 42 U.S.C. § 1983, alleging callous and deliberate indifference to a serious medical condition that was exacerbated by forcing Plaintiff to work in the kitchen and the erroneous termination and removal from that work assignment once the preexisting injury was further exacerbated on the work assignment in violation of the proscription against Cruel and Unusual Punishments Clause under the 8th Amendment to the United States Constitution.

JURISDICTION STATEMENT

1. This court has jurisdiction over the plaintiff's claims of violation of federal constitutional rights under 28 U.S.C. § 1331, 2201, 2202, 2283 and 2284. Also see <u>Oklahoma City v. Futtle</u>, 471 U.S. 808, 817 n. 14 (1985).

2. This court has jurisdiction to preside over claims brought under § 1983, as prescribed by 42 U.S.C. § 1983 and 1331(1) and 1343(a)(3)-(4). Also see <u>Moher v. Gagne</u>, 448 U.S. 122, 129 n.11 (1980); <u>Chapman v. Houston Welfare Rights Organization</u>, 441 U.S. 600, 602-03 (1979).

3. Consistent with Fed. R. Civ. P. 20(A)(2)(a), Jones may join multiple persons in one action as defendants only if two conditions are satisfied:

- the claims against the defendants must arise out of "the same transaction; occurence, or series of transactions or occurences"; and

- the claims must present a "question of law or fact common to all defendants."

Id.; also see sub. (A)(2)(b).

### Venue Statement

4. This lawsuit is properly venued in the United States District Court for the Eastern District of Wisconsin under 28 U.S.C. § 1391(B) as the actions complained about occurred at Waupun Correctional Institution (WCI) located in Waupun, Wisconsin. Also see Carillo v. Darden, 992 F. Supp. 1024, 1029 (N.D. Ill. 1998); Stafford v. Briggs, 444 U.S. 527, 544 (1980).

### Notice of Claim Statement

5. A Notice of Claim of Damage and Injury in Wisconsin is filed by a state prisoner pursuant to Section 893.82(3) and (5), Wisconsin Statutes, must be notarized and sent by certified mail to Wisconsin Attorney General; however, under sub. (3), a Notice of Claim does not apply to claims for either injunctive or declaratory relief. See Lewis v. Sullivan, 524 N.W. 2d 630 (1994).

### Statement on Exhaustion

6. The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997,E(a), makes exhaustion of the prison grievance system mandatory. Porter v. Nussel, 534 U.S. 516, 524 (2002). Though mandatory, exhaustion is not jurisdictional. Woodford v. Ngo, 548 U.S. 81, 101 (2006).

7. Exhaustion is an "affirmative defense" that prisoners prosecuting a § 1983 complaint do not have to plead in his or her civil rights act complaint - the defendants, were they to choose, must raise it. Jones v. Bock, 549 U.S. 199, 212-17 (2007). Since exhaustion is not a pleading requirement, it cannot be addressed at initial screening or by motion under Fed. R. Civ. P. 12(b)(6), to dismiss for failure to state a claim,

"except in those cases where non-exhaustion is clear on the face of the complaint," Jones, supra., at 214; nor can exhaustion be addressed on a motion under Fed. R. Civ. P. 12(b)(6), to dismiss for lack of subject matter jurisdiction, since failure to exhaust is not jurisdictional. Woodford, at 101.

8. Notwithstanding, Plaintiff Jones filed offender complaint WCI-2017-8045 through the Inmate Complaint Review System (ICRS) pursuant to Wis. Adm. Code § DOC 310.04 and DOC 310.01, that introduced the following claims to be resolved by the Institution Complaint Examiner:

PRESENTED ISSUE

- I was on [a] no work restriction per HSU from 3/1/17 to 4/8/17 and WCI Food Service repeatedly forced me to come in[to] the kitchen to work on a[n] injured knee.

PRIOR TO SUBMITTING COMPLAINT

- [Plaintiff] spoke to Food Service Supervisor, Ms. Wilson, on 3/14/17 and verbally informed her that HSU had placed me on a no-work restriction. Yet, I was still being called in[to] [work] and forced to work. I also informed my Psyche-[Worker], Dr. VanBuren, on 3/16/17 that I was being forced to work on a no-work restriction. [...] She contacted Lt. Keepers via telephone to report it.

THE ATTEMPT TO RESOLVE THIS ONE ISSUE

- After I informed Ms. Wilson on 3/14/17 about my restriction she told me she would look into the restriction. But HSU never sent her a notice or copies of the restrictions and it does not always [appear] in W.I.C.S. As far as my Psyche, Ms. VanBuren, she told Lt. Keeper that she personally went on W.I.C.S. and saw for herself [that] I was indeed on a no-work restriction. Lt. Keepers told Ms. VanBuren that he would send a copy to the Food Service personnel.

RELEVANT FACT(S) OF INMATE COMPLAINT

- After I informed Ms. Wilson on 3/14/17, about my restriction, she told me she would look into the restriction. On the above time and date, while working in Food Service, I was stationed at my assigned post, as the Northside Window Server. Before meals started, I informed C.O. kickerbaul as well as Sergeant Sanchez that I had injured my knee recently and I was in a not of pain because I had been standing up all day and needed to be seen by HSU, because the pain medication that HSU prescribed to me was not working. Sergeant Sanchez then responded in front of C.O. Kickerbaul, Inmate Timothy Wilks, Inmate Jackson and others, that since it has been a couple of days, he knows for a fact HSU will not see me. I then told him could he call and tell them

I need to be seen for my on going knee issues. He then
told me [that] he would not call because he knew I would
not be seen for an injury that was a few days old. At or
around 3:00 - 3:30 p.m., I spoke with Chef Brenda and inf-
ormed her of my knee issues and told her I had been stand-
ing all day and at the end of the shift. I would not be
able to carry the 9 food filled trays to the dishroom,
because it was too heavy on the knee. Chef Brenda, then res-
ponded, "You'll be fine." I told Chef Brenda, I was on a
no-work restriction and all of the standing and heavy lif-
ting is causing my knee to ache really bad. Chef Brenda
then responded that according to the position sheet, I was
only on a light duty restriction, and it says nothing about
lifting heavy or light weight items.

    During the shift, due to me having knee pain, C.O.
Kickerbaul allowed me to sit on milk crates and do my job;
which is against the Food Service rules per food service
administrator, Ms. Wilson. However, because standing for
long periods of time increased my pain, I was allowed
to sit.

    When the last cell hall was served and my job was com-
plete I began to take a stack of food filled diet trays
to the dishroom because Chef Brenda instructed me this
was part of my job description, I began to walk with the
stack of 9 food filled trays, and as I walked, my right knee
made a loud pop[ping] sound and it buckeled causing me to
drop all of the trays on the floor and causing me to fall
into the counter of the service table.

    This all occurred in front of two staff persons, Off-
icers Kickerbaul and Lockhart, and neither tried to assist
the inmate and Lockhart actually began laughing. I could not
walk and had to get aid and assistance from two inmates who
carried me to the Northside disposal bench. Sergeant San-
chez, then approached me about what happened to me and I
explained the incident to him. He then contacted health
services unit and I was subsequntly escorted to the health
service unit...

(Attachment #1-#2)

    9.  On March 23, 2017, the ICRS issued to Plaintiff Jones a DOC-410, ICE receipt, assigning his grievance number WCI-2017-8045 (Attachment #3).

    10.  On March 29, 2017, ICE Jim Muenchow issued DOC-401, ICE Report, with the following recommendation:

> • Officer Kibbel, Food Service Scheduling Officer, reports that Food Service did not know of the No Work Restriction until 3/19/17, the day inmate Jones reported an injury.

4
Case 2:17-cv-00788-PP   Filed 06/02/17   Page 4 of 19   Document 1

> Per Asst. HSM White, "pt was seen on 3/8/17 by nursing. He was placed on no work and no rec until 4/8/17. The proper paperwork was completed and routed to his Sgt. and worksite. On 3/19/17 he was seen again as a call over because of knee pain. He was ordered crutches on 3/8/17 and was not using them."
>
> Investigation reveals inmate Jones had an active light activity restriction in place from 2/17/17. Light activity means - Offender is restricted from work assignments requirimg steady paced activity. Offender should be allowed to work at own pace. Inmate Jones performed window server activities during the time the restricttion was placed. There is question to this assignment versus the nature of the Light Duty Restriction noting the position is steady paced in several intervals with breaks in the serving process. I do note that Light Duty does not include a lifting restriction.
>
> There is no question as to the No Work Restriction effective on 3/8/17. Inmate Jones should not have been sent to Food Service. Inmate Jones does not state here he informed his cell hall Sergeant of the No Work Restriction. Rather, it appears he voluntarily went to work. Further, he indicates he had suffered the injury some time before reporting it.
>
> The information provided in the complaint differs somewhat from information inmate Jones relayed to Sgt. Sanchez when he noticed inmate Jones leaning on the North Serving Line.
>
> Considering the contradictory information between the complaint and information from Officer Kibbel and Asst. HSM White, versus the information in the report of Sgt. Sanchez, recommendation is made to affirm to acknowledge the fact inmate Jones should not have been allowed to work from 3/8/17 on.
>
> Modification however, is that a copy of this complaint will be sent to FSA Wilson and Lt. Immerfall for further investigation into the matter, consistent with the recommendations of Security Director Meli on the report of Sergeant Sanchez.

(Attachments #4-#5).

11. On March 31, 2017, Defendant Brian Foster, acting as the Appropriate Reciewing Authority (ARA), accepted the recommendation of the Institution Complaint Examiner and Complaint WCI-2017-8045, was affirmed with modification (Attachment #6).

12. Plaintiff Jones Filed a timely appeal with the Corr-

ections Complaint Examiner (CCE), who issued a DOC40SA, CCE Receipt, acknowledging the appeal filed by Jones on April 13, 2017 (Attachment #7), and April 13, 2017 the same day, indicated that the institution's response to affirm with modification was appropriate (Attachment #8), and on April 27, 2017, the Office of the Secretary, Ms. Cindy O'Donnel, accepted the recommendation of the CCE, and Complaint No.: WCI-2017-8045, was affirmed with modifications as indicated by the Institution Complaint Examiner (Attachment #9). Because the Office of the Secretary is the final step in the grievance system in the State of Wisconsin, it satisfies exhaustion of all available administrative remedies. Pavey v. Conley, 544 F. 3d 739, 742 (&th Cir. 2008), cert. denied, 129 S. Ct. 1620 (2009); Booth v. Churner, 532 U.S. 731 (2001).

PARTIES IN THE LAWSUIT

Plaintiff:

13. Christopher D. Jones (Jones) is a person serving a lawful conviction in Wisconsin Department of Corrections (DOC) and is currently incarcerated at Waupun Correctional Institution (WCI) whose address is: Post Office Box 351, Waupun, Wisconsin, 53963 and Jones was incarcerated at WCI at all relevant times to this lawsuit.

Defendants:

14. Sergeants Stoughton, Bozack, Manthei and Officers Kibbel and Lockhart are correctional officers who are employed by the DOC and are assigned at WCI, whose duties, at least in part, are defined by Wis. Adm. Codes §§ DOC 306.03 and DOC 306.04 that provides the following "security policy" requires that the "Primary security objectives of the department are to protect the public, staff, and inmates and to afford inmates the opportunity to participate in correctional activities in a safe setting." And "[R]esponsibility of employees" [are that] "[E]very employee of the department is responsible for the safe custody of the inmates confined in the institutions." At all times relevant to this lawsuit, these defendants were acting under color of state law; therefore, Defendants Stoughton, Bozack, Manthei, Kibbel and Lockhard are being sued in the defendants' individual capacities for the acts and/or omissions herein described.

15. Brian Foster at all times relevant to this lawsuit is the Warden at WCI whose duties, in part, lies under Sections 302.04, 302.08, and Wis. Adm. Codes §§ DOC 306.03 and DOC 306.04, and was acting under color of state law; therefore, Defendant Brian Foster is being sued in the individual and official capacities for the acts and/or omissions herein described.

16. Captain Bauer, Ella L. Krueger, Nancy White and Ms. Wilson are supervisors at WCI in the Food Service Department, Health Service Unit and the South Cell Hall whose duties, in part lies under Wis. Adm. Codes §§ DOC 306.03 and DOC 306.04, and at all times relevant to this lawsuit these defendants were acting under color of state law and are being sued in the defendants' official and individual capacities.

17. Chef Brenda is a Chef employed by the Department of Corrections and assigned at WCI in the Food Service Department and Sergeant Sanchez is a correctional sergeant who also have duties, at least in part, under Wis. Adm. Codes §§ DOC 306.03 and DOC 306.04, and at all times relevant to this lawsuit were acting under color of state law and are being sued in their individual capacities for the acts/omissions herein described.

18. Toni Meli is a security director for the Department of Corrections who is assigned at WCI, and Officer Kroll is a correctional officer for the DOC who is also assigned at WCI and is the "Movement Assignment" officer in the security director's office and the two have duties as defined by under Wis. Adm. Code §§ DOC 306.03, and DOC 306.04, and at all times relevant to this lawsuit, Defendants Meli and Kroll were acting under color of state law; therefore, the two defendants are being sued in their official and individual capacities for the acts and/or omissions herein described.

CIRCUMSTANCES GIVING RISE TO 1983 CLAIM

19. Plaintiff Jones realleges and incorporates all previous paragraphs as though fully set forth herein.

CIVIL RIGHTS VIOLATIONS

20. Formerly the rule was that "a complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of the plaintiff's claims which would entitle plaintiff to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Federal Rules of Civil Procedures once required a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), which meant that federal courts required only that complaints give "fair notice of what the...claims is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); accord, Swierkiewicz v. Sorema, 534 U.S. 506, 512 (2002).

21. However, the Supreme Court decision in Twombly, seems to have made the "fair notice" requirement much more demanding:

> "...[W]e so not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."

Id., 550 U.S. at 555, 570.

22. The Supreme Court in Ashcroft v. Iqbal, went on to hold that the "plausibility" requirement "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; the "sheer possibility that a defendant has acted unlawfully" is insufficient, and pleading facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id 129 S. Ct. 1937, 1949 (2009).

### DEFENDANTS' DECISION TO ACT DELIBERATELY INDIFFERENT TO PLAINTIFF'S EXISITING INJURY WHICH EXACERBATED THAT INJURY BY FORCING PLAINTIFF TO WORK IN THE KITCHEN

23. On February 24, 2017, Jones was seen in the prison's Health Service Unit by RN Kaceyon for the following: A basketball injury (Attachment #10). The RN invoked a musculoskeletal protocal and diagnosis were impaired mobility/comfort. The RN updated WICS and sent a copy of the diagnosis to Defendants Stoughton and Bozack which indicated that Plaintiff Jones was on permanent light duty for work assignment and Defendant Kroll, who is in charge of work in the office of prison movement, a copy of the medical restriction that included an ace wrap, crutches,

ice, placing Jones on meals in the cell, a lower bunk, a lower tier and first floor only along with no work until March 01, 2017 (Id).

24. On February 27, 2017, RN Kaceyon sent Jones a Memo that included the following:

> Your right knee xray was a normal xray of the knee. You will be seen on 3/1 for a followup exam of your knee, until then, continue with current plan of care which includes no work, ace wrap, crutches, ice, low bunk/lower tier and tylenol and meals in cell, rest, and elevate right knee as needed. Contact HSU if your symptoms worsen before appointment.

(Attachment #11).

25. Defendants Kroll, Bauer, Krueger, Wilson and Brenda were all aware of the medical restriction and knew or reasonably should have known that Jones was, first, on light duty work assignment as a result of a chronic knee condition, and second, a copy of the restriction was sent to the Defendants' offices for both, the light duty and next for the no-work restriction.

26. Defendant Kroll is the classification and movement officer who assigns prisoners at Waupun Correctional Institution to movement assignments.

27. Defendant Bauer is the supervisor of the south cell hall where Jones, at all times relevant to this lawsuit, was assigned and responsible for facilitating the implimentation of the medical restriction and ensuring that they have been carried out as written by the health service unit and that would include Defendants Stoughton and Bozack who have instituted proscrption against Jones going to work and recreation.

28. Defendant Kibbel and Manthei are the scheduling officers in the kitchen and chose to schedule Jones for work in the kitchen during the time that the plaintiff was on a no-work restriction; however, Defendants Bauer, Stoughton and Bozack chose to restrict Jones attendant to recreation, meals and other out-of-cell activities.

29. Defendants Krueger and Wilson were both provided with a copy of the light duty restriction for Jones by the Health Service Unit manager, Defendant Nancy White, and chose not to follow

that restriction but rather, defendants chose to force Jones to continue to work at full strength including all requisite duties and heavy lifting and mobility for the position that Jones was assigned, in this case, food window server.

30. On March 01, 2017, Jones was seen by health service unit and the following progress notes delinates the examination:

> Pt seen as callover to review medical restrictions following recent knee injury. Pt states using knee brace when up walking. Started back to work this am. Knee better but still painful. VS: BP 126/90 P91, RR 16, Spo2 98% F Knee mod...edema from knee down to ankel. Ecchymosis noted to inferior and medical aspect of petella and + 2-3 pitting edeima from knee down to ankle. Ecchymosis noted to inferior and medical aspect of petella. Very TTp. Limited ROM 2° pair and edema... sensation intact. Altered confort t/t musculoskeletal injury. Will extend [no] work and [no] rec X1 week. Can go out to chow c brace on c slow walk. [N]o exercises or activities @ this time. Has single cell but on 2nd tier. Pt declines move to 1st tier as he would have to give up single cell...

(Attachment #12).

31. On March 8, 2017, Jones was again seen by the Health Service Unit and again the Health Service Unit found there to be pain and an impaired musculoskeletal functioning in the knee of Jones and reiterated the no work restriction along with the no recreation to be continued through April 08, 2017 (Attachment # 12).

32. On the same day, RN Ruffin issued a Memo to Jones that provides the following:

> You have been scheduled to see Dr. Manlove for your right/left knee pain. Your low bunk/low tier restrictions end on 03-26-17. Your light activity restriction is permanent, your no work and no recreation restriction expires on 4-08-17, and your ice bag 3 times a day ends 4-8-17.

(Attachment #13).

33. On March 19, 2017, while working in the food service department Jones was stationed at Plaintiff's assigned post, as the Northside Window Server area and before meals started, Plaintiff informed Correctional Officer Kickerbaul as well as Defendant

Sanchez that Plaintiff injured Plaintiff's knee recently and Jones was in a great deal of pain due to having to stand all day and would like to be seen by the health service unit because the pain medication was no longer working.

34. Defendant Sanchez chose to advise Jones, and in front of Correctional Officer Kickerbaul and Inmates Timothy Wilks, Jackson and others, that since it had been a couple of days, Defendant Sanchez knew for a fact that the health service unit would not see Jones.

35. Jones then told Defendant Sanchez to call the health service unit and inform staff in the health service unit to call Jones over for sickcall and triage for the ongoing chronic knee injury; however, Defendant Sanchez was obstanate that Defendant Sanchez would not call the health service unit.

36. On the same day, at or about 3:00 to 3:30 p.m., Jones conversed with Chef Brenda and informed Defendant Brenda of the chronic knee injury and advised Defendant Brenda that Jones had been standing all day and at the end of the shift, Jones would not be able to carry the nine or so food filled trays to the dishroom as they were extremely heavy and just too much on the injured knees; however, Defendant Brenda responded by telling Jones that he would be fine or words to that effect.

37. Plaintiff then told Defendant Brenda that Jones was on a medical no-work restriction regarding the chronic knee problems with both Jone's knees and that all of the standing and heavy lifting had caused Jones to ache really bad.

38. Defendant Brenda chose to respond by advising Jones that according to the position sheet, Jones was only on a light-duty-restriction, and it said nothing about lifting or light weight items.

39. During the shift, due to Jones chronic knee pain, Correctional Officer Kickerbaul allowed Jones to sit on milk crates and perform Jones's job duties which was against the rules for the food service department consistent with the directives from Defendant Wilson and Jones was instructed to get off of the crates.

40. During the last call for meal trays from the final cell hall, Jones began stacking the remaining food trays used for the diet meals distributed at the serving window and began taking the non-distributed trays back to the dishroom when Jones's knee buckled after making an audable popping sound. The strength gave out and Jones dropped the trays to the floor causing Jones to fall into the counter of the service table.

41. Plaintiff's fall occurred in front of Defendant Lockhart and Correctional Officer Kickerbaul and neither of the two tried to assist Jones and Defendant Lockhart chose to be deliberately indifferent by laughing when Jones fell into the counter and chose not to call the medical staff personnel although Jones could not walk and had to seek assistance from two other prisoners to get to the Northside tray disposal bench area where Defendant Sanchez chose to approach Jones about the situation and Jones explained the incident to Defendant Sanchez and Defendant Sanchez chose to write incident report # 00261701 that included the following narration:

> On March 19, 2017, at approximately 4:30 pm, I, Sgt. Sanchez was working at my assigned post as Food Service Sergeant. I observed inmate Jones, Christopher (490461) housed in the south cell hall, in cell H-23, leaning on north serving line. It should be noted inmate Jones was currently working in Food Service, assigned to work as the north window worker. Inmate Jones stopped me stating "Sanchez, my knee buckled, I shouldn't even be here." Let it be known, according to the Food service work schedule, inmate Jones is currently on light duty, and I asked inmate Jones what had happened. Inmate Jone stated "I was carying these trays." They know I shouldn't be doing this, it is against my restrictions." Inmate Jones if he had any specific restrictions. Inmate Jones replied "yes, I am on a no-work restriction until April 4th." I asked inmate Jones if he had notified any staff regarding this information. Inmate Jones replied "Yes, I tell them all the time, this is my fifth time coming in since I was placed on this restriction. Sgt. Manthei told me it wasnt in WICS [files on the computer system]." I informed inmate Jones to have a seat on the bench, and I would contact HSU. I then checked WICS and observed restriction for no-work effective 03/08-17 ending on 04/08/17 time stamped with J. Ruffin. I contacted Nurse Jensen informing him of the situation and the current injury inmate Jones had sustained. Nurse Jensen requested inmate Jones be escorted

>     to HSU to be evaluated. I contacted Lt. Burns infor-
>     ming him of the situation. Inmate Jones was escorted
>     to HSU at approximately 5:00 pm. I had no further
>     contact with inmate Jones. An accident report was com-
>     pleted regarding the incident.

(Attachment #15).

42. Defendant Sanchez forwarded the Incident Report to the line supervisor, Lieutenant Larson, and the supersior included the following comments:

>     Inmate was on a "No work" restriction and was at work
>     carrying trays when he felt his knee buckle. Inmate
>     was escorted to HSU to be evaluated. Inmate returned
>     to cell hall without incident. Accident report compl-
>     eted. Recommend copy to HSU Manager for review and fo-
>     llow up with staff.

(Attachment #15).

43. Defendant Meli was sent Defendant's Incident Report and Meli's comments mimmicked those of Lt. Larson but further indicated that Jones would not be called into work until special need is lifted. (Attachment #16).

44. On March 20, 2017, Jones submitted a DOC-3035B, Psychological Services Request, to Jones's Clinician, Dr. VanBuren, and in that request relayed the following information:

>     On 3-16-17, during our session I informed you that
>     Food Service had continued to make me work even
>     though I have a no-work restriction. You called
>     Lieutenant "Keepers" to report it after you looked
>     on your computer to confirm for yourself [that]
>     I was on a no-work status. He said to you that he
>     would contact them in Food Service to inform them
>     of my restriction. Did he or didn't he inform them?

(Attachment #17).

45. Dr. VanBuren chose to respond on March 21, 2017, alleging that the Psyche had seen Jones at Jones' cell front but noted that the unit and control sergeant called 3-19-17 and reinforced no-work restriction (Id).

46. On March 20, 2017, Jones submitted a DOC-3035, Health Service Request and Copayment Disbursement Authorization, sheet to the health service unit that included the following information:

>     I was on a no-work restriction since 3-9-17. How is
>     it Food Service continued to call me in to work? Was

> my restriction sent to food service? If so...When and to whom?

(Attachment #18).

47. On March 21, 2017, RN Vicki A. Gwendolymn responded by alleging that the restriction was placed in the computer, and enclosed a copy for Jones (Attachment #18).

48. On March 20, 2017, Jones submitted a DOC-3035, Health Service Request and Copayment Disbursement Authorization, that reported the following information to the medical staff:

> On 3-19-17, I re-inured my right knee at work in Food Service. I saw H.S.U. staff 3-19-17 and was placed on cruthes, my knee hurts really, really bad! I have no pain meds...Please help me; I'm in pain!

(Attachment #19).

49. On March 22, 2017, RN Gwendolyn responded stating that "You did not show for appointment yesterday, being rescheduled." However, Jones is assigned to a maximum custody penitentiary and Jones has no control over movement and nor may Jones go to or deny a visit to the health service unit as they are done by staff escort or on a system involving a pass that the prisoner must consider a direct order.

50. On March 19, 2017, Jones contacted Lieutenant Keepers concerning whether or not after being contacted by Dr. VanBuren over the phone the lieutenant took any action about Jones being forced to work in the Food Service Department with the injury to both knees of Jones and whether the lieutenant had contacted Food Service himself.

51. On March 29, 2017, the lieutenant responded by request and indicated the following:

> I talked to PSU and gave the cell hall SGT the print out of the restriction with the dates highlighted. The sheet should be in the cell hall sgt. area.

(Attachment #20).

52. On March 30, 2017, Jones wrote and obtained a copy of the time period which Jones was forced to work while on the no-work medical restriction and the director in the business office remitted to Jones a sheet for the pay period of March 5th through 18th, 2017, showing some 58 hours that had been worked.

### DEFENDANTS' DECISION NOT TO TRAIN EMPLOYEES PROPERLY TO AVOID DELIBERATE INDIFFERENCE BY FORCING PRISONERS WITH DEFICIENT INJURIES TO WORK INJURED EXACERBATING THE INJURY

53. Under § 1983, on a person who "subject, or causes to be subjected" the plaintiff to a deprivation of rights can be held liable. The doctrine of respondent superior, which makes any employer automatically responsible for the wrongdoing of employees, does not apply under § 1983. See Paratt v. Taylor, 451 U.S. 527, 537 n.3 (1981); Monell v. New York City Dep't of Social Services, 436 U.S. 658, 691-93 (1987).

54. The warden, in this case, Defendant Foster, cannot be held liable for every illegal act that takes place in the Waupun Correctional Institution and Jones must show the personal involvement, see Armstrong v. Squadrita, 152 F. 3d 564, 581 (7th Cir. 1998)("individual wrongdoing" must be shown), of each defendant causing a violation of plaintiff's rights.

55. There are various ways personal involvement can be shown. One court has said that a §1983 defendant can be held liable if:

> (1) the defendant participated directly in the alleged constitutional violation,
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong,
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom,
> (4) the defendant was grossly negligent in supervision of subordinates who committed the wrongful acts, or
> (5) the defendants exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

See Colon v. Coughlin, 58 F. 3d 865, 873 (2nd Cir. 1995); also see Hildebrandt v. Illinois Dep't of Vatural Resources, 347 F. 3d 1014, 1039 (7th Cir. 2003)("[a] official satisfies the personal responsibility requirement of section 1983...if the conduct causing the constitutional deprivation occurs at [his or her] direction or with [his or her] knowledge and consent. That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. In short, some causal connection

or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." (citation omitted)).

INDIRECT PARTICIPATION

56. A defendant may be held liable "if the defendant set in motion a series of events" that she or he knew or reasonably should have known would cause a constitutional violation, even if others actually performed the violation. See Conner v. Reinhard, 847 F. 2d 384, 397 (&th Cir. 1998); accord, Bruner v. Baker, 506 F. 3d 1021, 1026 (10th Cir. 2007).

57. Officials who set policy, write regulations, or give orders may be liable even if they are not directly involved in enforcing them against the plaintiff. Brock v. Wright, 315 F. 3d 158, 165-66 (2nd Cir. 2003); Martin v. Sargent, 780 F. 2d 1334, 1338 (8th Cir. 1985)("A prison warden can be held liable for policy decisions which create unconstitutional conditions.").

FAILURE TO ACT

58. Prison personnel may be held liable for their failure to act if it results in a constitutional violation. See Estelle v. Gamble, 428 U.S. 97, 97 S. Ct. 2854 (1976). Officers or supervisors can also be held liable if they are present but fail to intervene when a prisoner is subjected to brutality by staff or assault by other inmates. Officials or employees who know, or reasonably should know, that a prisoner is being treated unconstitutionally may be held liable if they fail to do anything about it. See Greason v. Kemp, 891 F. 2d 829, 839-40 (11th Cir. 1990)(warden who knew or should have known of inadequate psychiatric staffing could be held liable); Also see Johnson v. Pearson, 316 F. Supp. 2d 307, 317-18 (E. D. VA 2004)(officials who failed to act on second-hand smoke complaint could be held liable).

59. Prison officials can be informed sufficiently to hold them liable in several ways. One is failure to act on "report or appeal" within the prison system, see Smith v. Rowe, 761 F. 2d 360, 369 (7th Cir. 1985)(Director of Corrections held liable for his failure to remedy improper segregation of prisoner after

16

receiving report from staff member), including a grievance. Other non-official sources of information may also support liability if not acted upin. See <u>Verser v. Elyea</u>, 113 F. Supp. 2d 1211, 1215-16 (N.D. Ill. 2000). A number of decisions have held that prisoners' letters, requests, and other complaints could be sufficient to give notice of constitutional violations. See <u>Reed v. McBride</u>, 178 F. 3d 849, 854 (7th Cir. 1999)("[A] prison official's knowledge of prison conditions learned from an inmate's communication can...require the officer to exercise his authority and to take the needed action to investigate, and if necessary to rectify the offending condition." (quoting <u>Vance v. Peters</u>, 97 F. 3d 987, 993 (7th Cir. 1996))

60. More broadly, correctional supervisors may be held liable for failing to correct unconstitutional conditions or practices within their areas of authority if they knew or should have known about them. See <u>Danley v. Allen</u>, 540 F. 3d 1298, 1315 (11th Cir. 2008). Defendants can be held liable for failing to act only if they had the power to correct the violation and the duty to act.

61. In the instant case, Defendants Bauer, Foster, Meli, White, Krueger and Wilson are the supervisors at WCI in their respective area and Defendant Brenda is a Chef who should all have been given notice of Jones issues in their office and knew or reasonably should have known that Defendants Kroll, Manthei and Kibbel were blatantly disregarding a medical restriction for either light-duty work assignment or no-work assignment when preparing and posting the work schedules in the kitchen and they chose not to do anything about it resulting in Jones working in the Kitchen and performing his job assignment with injuries that were later exacerbated.

62. Defendants Bauer, Foster, Meli, White, Krueger and Wilson chose to turn a blind eye to the fact Jones and other prisoners are being forced to work in the kitchen when the prisoners have injuries and at the same time, the supervisors will disallow the prisoners meals in the dining facilities, recreation, library and the likes creating a custom or culture and policy that,

while unwritten, if followed - and involves the prisoner being forced to work and work in assignments that are strenuous and maintains a potential for the exacerbation of the pre-existing injury causing further damage to the prisoners.

63. Defendants Bauer, Foster, Meli, White, Krueger and Wilson chose to be callously and deliberately indifferent to Jones serious medical issue by forcing Jones to work on the injured knees that subsequently caused Jones to re-injury himself while performing his job assigned duties.

64. Defendants Stoughton, Bozack and Kroll were provided with the no-work restriction and chose to force Jones to attend the Food Service work detail to perform a work assignment that proved detrimental to the good health of Jones.

65. Defendants Manthei, Kibbel, Krueger and Wilson have chose not to define policies in the Food Service Department that definitively spells out light-duty work assignment which perpetuated Defendant Brenda's deciding that Jones would be fine were he not to perform certain aspects of his assigned job duties, in this case, carry meal trays filled with food.

66. Defendants Sanchez and Lockhart chose not to contact the health service unit staff when Jones reported to the two defendants that Jones was in pain and needed to see someone about the injuries before the knee buckled and Jones fell into the server area further exacerbating Jone's knee injuries.

67. Defendant Meli chose to file a DOC-1408, Assignment Removal, sheet that fired from the kitchen Plaintiff Jones after the subsequent injury and for his staff forcing Jones to attend the kitchen while on a no-work restriction.

REQUESTED RELIEF

Compensatory Damages

A. Plaintiff Jones request compensatory damages in an amount to be determined per trier of fact but not less than $100,000.

B. Plaintiff Jones request punitive damages in an amount of $100,000 to be remitted by Defendants individually and severally.

Injunctive Relief

C. Plaintiff Jones request an injunction that enjoins defendants to follow the Special Needs and Medical Restrictions implemented by the health service unit for prisoners to avoid exacerbating prisoners injuries for the sake of work assignments or prison needs (i.e., food workers in the kitchen).

D. Plaintiff Jones request an injunction that enjoins defendants to remit any and all loss prison wages as a result of Defendant Meli's decision to fire Jones after his remonstration for being forced to work in the kitchen after receiving a no-work restriction.

Declaratory Judgment

E. Declare that the rights of Plaintiff Jones were violated contrary to the Eighth Amendment and under any other provisions indicated by the district court.

Jury Trial Demand

F. Plaintiff Jones request a trial by jury of not less than six (6) persons to have this lawsuit decided on its merits.

Any Additional Relief

G. Any and all further relief that this court deems is necessary and appropriate giving the circumstances in the foregoing lawsuit.

Verification

Pursuant to 28 U.S.C. §1746, I, *Christopher Jones*, declare under penalty of perjury, that the above 67 paragraphs are made by Plaintiff and are true and correct and that the 20 pages attached are those keep in the normal course of business with prison officials and are true and correct copies thereof.

Executed on this 29 day of MAY, 2017, in Waupun, Wisconsin.

Respectfully submitted by:

*Christopher D. Jones*
Christopher D. Jones, Plaintiff
Pro se

Waupun Corr. Inst.
P.O. Box 351
Waupun, WI 53963