UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER D. JONES,

                Plaintiff,

v.                                      Case No. 17-cv-788-pp

BRIAN FOSTER, TONI MELI,
SGT. STOUGHTON, SGT. BOZACK,
SGT. MANTHEI, SGT. SANCHEZ,
CO KROLL, CO KIBBEL,
CO LOCKHART, CAPTAIN BAUER,
N. WHITE, WILLSON,
KRUEGER, and CHEF BRENDA,

                Defendants.

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2) AND SCREENING THE COMPLAINT (DKT. NO. 1)**

The plaintiff, an inmate in state custody, is representing himself. He has filed a complaint, alleging that the defendants violated his constitutional rights. Dkt. No. 1. He also has filed a motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2. This decision screens the complaint and resolves the plaintiff's motion.

**I.    Motion for Leave to Proceed without Prepayment of the Filing Fee**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. The PLRA allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without prepaying the case filing fee, as long as he meets certain

1

conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). On June 5, 2017, the court ordered the plaintiff to pay an initial partial filing fee of $18.56. Dkt. No. 5. The plaintiff paid the initial partial filing fee on July 5, 2017. Accordingly, the court will grant the plaintiff's motion to proceed without prepayment of the filing fee. The court will order the plaintiff to pay the remainder of the filing fee over time in the manner explained at the end of this decision.

## II. Screening the Plaintiff's Complaint

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To proceed under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was acting under color of state law. Buchanan-Moore v.

2

County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Village of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

A. The Plaintiff's Allegations

The plaintiff alleges that he suffers from chronic knee pain. Dkt. No. 1 at ¶25. On February 17, 2017, the Health Services Unit (HSU) placed him on a permanent, light-activity work restriction. Id. at ¶10, 25. Light activity means that the plaintiff should have been restricted from work assignments that require steady-paced activity. Dkt. No. 1-1 at 2. There is no lifting restriction imposed in connection with a light-activity restriction, but a person on such a restriction should be allowed to work at his own pace. Id.

As of February 2017, the plaintiff was employed in the kitchen as a window server, which required him to be on his feet during his shift and to carry food-filled trays to the dish room at the end of his shift. Dkt. No. 1 at ¶33-36. The plaintiff alleges that, despite knowing about his light-activity restriction, defendants Krueger, Willson and Chef Brenda "chose to force [the plaintiff] to continue to work at full strength including all requisite duties and heaving lifting and mobility . . . ." Id. at ¶29, 36-38.

On February 23, 2017, the plaintiff injured his right knee playing basketball. Dkt. No. 1-1 at 8. As a result, in addition to the light-activity

3

restriction, HSU placed the plaintiff on no-work restriction through March 1, 2017. Id. The nurse noted that she had updated WICS (the internal database) and had notified Kroll and Bozack. Id. On March 1, 2017, HSU extended the plaintiff's no-work restriction for another week, and added no-exercise or activities restrictions; one week later, HSU extended the plaintiff's restrictions through April 8, 2017. Id. 10, 12.

The plaintiff states that despite the no-work restriction, defendants Kibbel and Manthei (the scheduling officers in the kitchen) scheduled him to work. Dkt. No. 1 at ¶28. He states that he told Willson (the food services manager) about the no-work restriction, and she said she would look into it. Id. at ¶8. He also states that defendants Bauer, Stoughton and Bozack restricted the plaintiff's attendance to recreation, meals and other out-of-cell activities based on the restriction. Id. at ¶27-28. The plaintiff alleges that defendants Kroll, Bauer, Krueger, Willson and Chef Brenda all knew of the no-work restriction. Id. at ¶25.

On March 19, 2017, the plaintiff was working in the kitchen at his assigned post. Id. at ¶33. He informed correctional officer Kickerbaul (who is not named as a defendant) and defendant Sanchez that he recently had hurt his knee, and that it was hurting from standing all day. Id. He asked to go to HSU because the pain medication wasn't working. Id. Sanchez denied the plaintiff's request, because it already had been a couple of days since the plaintiff had hurt his knee, and Sanchez didn't think HSU would see him for an

old injury. Id. at ¶34. The plaintiff then asked Sanchez to call HSU and tell them he wanted to be seen at sick call; Sanchez refused. Id. at ¶35.

A little later in the shift, the plaintiff informed Chef Brenda that, because of his chronic knee issues and the fact that he had been standing all day, he did not think that he would be able to carry the food trays to the dish room at the end of his shift. Id. at ¶36. Chef Brenda told the plaintiff that he would be fine. Id. The plaintiff then told Chef Brenda that he was on a no-work restriction, and that all of the standing and lifting was causing his knees to hurt really bad. Id. at ¶37. Chef Brenda consulted the position sheet, and she said that it indicated the plaintiff was on a light-activity restriction, with no mention of a lifting restriction. Id.

During the shift, Kickerbaul allowed the plaintiff to sit on milk crates while he did his job, even though that was against department rules. Id. at ¶8, 39. Near the end of his shift, the plaintiff began stacking the remaining food trays to take them back to the dish room. Id. at ¶40. The plaintiff's knee made a popping sound, then buckled; the plaintiff dropped the trays and fell into the counter of the service table. Id. Defendants Lockhart and Kickerbaul saw the plaintiff fall, but, according to the plaintiff, neither one tried to assist the plaintiff. Id. at ¶41. To the contrary, the plaintiff states that Lockhart laughed at him. Id. The plaintiff states that two inmates helped him to a nearby bench, and Sanchez approached the plaintiff to talk to him about what had happened. Id.

The plaintiff includes the incident report written by Sanchez, in which Sanchez stated that, after the plaintiff fell, the plaintiff told Sanchez, ". . . my knee buckled, I shouldn't even be here" and that working was "against his restrictions." Id. Sanchez noted that, according to the food service work schedule, the plaintiff was on a light-duty restriction, so he asked the plaintiff if he had other restrictions. Id. The plaintiff stated that he was on a no-work restriction. Id. When Sanchez asked the plaintiff if he had told anyone that, the plaintiff said, "Yes, I tell them all the time, this is my fifth time coming in since I was placed on this restriction. Sgt. Manthei told me it wasn't in WICS [files on the computer system]." Id. Sanchez's report indicates that he looked in WICS and discovered that the plaintiff was, in fact, on a no-work restriction. Id. He told the plaintiff to sit on the bench, and he called HSU. Id. At their request, a correctional officer escorted the plaintiff to HSU for an evaluation. Id.

Sanchez forwarded his incident report to his line supervisor (who is not a defendant); the supervisor approved it and forwarded it, with a summary of the incident, to defendant Meli. Id. at ¶43. Defendant Meli concurred with the line supervisor's summary, and added that the plaintiff should not be called into work until his special needs were lifted. Id. at ¶43.

The plaintiff summarizes correspondence he had with various individuals at his institution after the fall, regarding who was informed of the no-work restriction, when they were informed and why he was scheduled to work despite the restriction. Id. at ¶44-53. The plaintiff does not name as defendants in this case any of the individuals with whom he corresponded, and

6

none of their responses identify a defendant who was informed of the no-work restriction prior to March 19, 2017 (*e.g.,* Nurse Vicki Gwendolyn stated that she placed the restriction in WICS, Doctor VanBuren stated that he told Lieutenant Keepers (who is not a defendant), and Keepers stated that he told the cell hall sergeant, but did not identify the cell hall sergeant by name). Id.

On March 22, 2017, the plaintiff filed an inmate complaint in which he explained the events described above. Id. at ¶8. About a week later, Jim Muenchow (who is not a defendant) issued an inmate complaint examiner report. Id. at ¶10. Muenchow noted that defendant White (the assistant health services manager) explained that the plaintiff had been placed on a no-work restriction and that the paperwork had been completed and routed to the plaintiff's sergeant and worksite. Id. He also stated that, according to defendant Kibbel (the food service scheduling officer), food service did not know about the no-work restriction until March 19, 2017, the day the plaintiff fell while working. Id. ¶10. Muenchow then questioned the compatibility of the plaintiff's job, which is steady-paced in several intervals, with his light-duty restriction. Id. Finally, Muenchow explained that, while the plaintiff should not have been at work that day, the plaintiff did not indicate that he had informed his cell hall sergeant that he was on a no-work restriction, and it appeared that the plaintiff had gone to work voluntarily. Id.

Based on his investigation, Muenchow acknowledged that the plaintiff should not have been at work that day. Id. He then routed the complaint to Willson and Lieutenant Immerfall (who is not a defendant) for further

7

investigation, which was consistent with Meli's recommendation following Sanchez's incident report. Id.

B. The Court's Analysis

1. *Foster, Meli, White, Bauer, Stoughton, Bozack, Krueger, Kroll, and Kibbel*

Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus liability does not attach unless the individual defendant caused or participated in a constitutional violation." Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996). There is no supervisory liability, collective liability, or vicarious liability under 42 U.S.C. §1983. See Pacelli v. deVito, 972 F.2d 871, 877 (7th Cir. 1992). That means that, with respect to any claim or claims the plaintiff advances in his complaint, he must identify the individual defendants and explain what each defendant did or did not do to violate his constitutional rights.

The court will dismiss Brian Foster (the warden) as a defendant. The plaintiff has not alleged that he, or anyone else, informed Foster that the plaintiff was being scheduled to work despite having a no-work restriction. Foster cannot be responsible for failing to remedy alleged violations that he did not know about. The plaintiff appears to have named Foster solely because of Foster's supervisory position. That is not a sufficient basis for liability.

The plaintiff's claim against Meli fails because the plaintiff does not allege that Meli knew about the no-work restriction before the date of Sanchez's incident report. Meli could not have prevented alleged violations that he did not know about. The plaintiff's allegations that Meli's response to Sanchez's

8

incident report cost him his job also fail to state a claim. On the one hand, the plaintiff complains that no one paid attention to his work restrictions; on the other hand, he complains that Meli responded to the incident report by stating that the plaintiff could not return to work until his restrictions were lifted. The plaintiff cannot have it both ways. Meli did exactly what the plaintiff complains others did not: he ordered food service to honor the restrictions put in place by HSU. This does not violate the Constitution.

The plaintiff's allegations against White fail to state a claim because, again, he appears to name her based soley on her role as a supervisor of HSU. Muenchow's ICE report reflected White's representations that HSU processed the no-work restriction paperwork and sent it to the plaintiff's sergeant and food services. These representations are consistent with the nurse's responses to the plaintiff's correspondence, and the plaintiff does not allege that they are inaccurate. Even accepting the plaintiff's allegations as true, White did her job and conveyed the information to the appropriate people; that is all the Constitution requires of her in these circumstances.

The court also will dismiss Bauer, Stoughton and Bozack as defendants. Although the plaintiff states that these defendants knew about the no-work restriction, he does not indicate that they played any role in scheduling the plaintiff to work. Instead, the plaintiff indicates that these defendants *restricted* his attendance at recreation, meals and other out-of-cell activities, just as HSU required. Dkt. No. 1 at ¶28. Because they were not responsible for scheduling

9

the plaintiff to work, and because they followed the no-exercise, no-activity restriction, the plaintiff does not state a claim against them.

The court also will dismiss Krueger and Kroll. The plaintiff alleges that these defendants knew about the no-work restriction, but he does not explain what role they played in making him work while on the restriction. According to the plaintiff, Kroll is the classification and movement officer who assigns prisoners to movement assignments. The plaintiff does not explain how this role is connected to scheduling workers in the kitchen, nor does he state that he ever talked to Kroll in an effort to be relieved of his work assignment. The fact that Kroll knew about the restriction (because HSU sent him a copy) does not prove that it was Kroll's responsibility to make sure that others honored the restriction.

Similarly, it appears that Krueger (who the plaintiff asserts knew about the restriction) had some supervisory role at the kitchen, but it is unclear whether he had any role in scheduling the plaintiff, or knew that the plaintiff was working in violation of the restriction. The plaintiff does not allege that he (or anyone else) ever spoke to Krueger about being scheduled in violation of the restriction.

Finally, the court will dismiss Kibbel. The plaintiff states that Kibbel scheduled him to work despite the no-work restriction. In response to Muenchow's investigation, however, Kibbel explained that he did not know about the restriction until the day that the plaintiff injured himself. The plaintiff does not dispute this. While he asserts that he told Manthei (the other

food services scheduler) about the restriction, he does not assert that he told Kibbel about the restriction. Kibbel cannot be held liable for failing to honor a restriction that he did not know about.

    2.    *Manthei, Chef Brenda, Willson, Sanchez and Lockhart*

Prison officials violate the Eighth Amendment when they know of a substantial risk of serious harm to inmate health or safety and they either act or fail to act in disregard of that risk. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994); <u>Roe v. Elyea</u>, 631 F.3d 843, 857 (7th Cir. 2011).

The court will allow the plaintiff to proceed on an Eighth Amendment claim against Manthei. The plaintiff asserts that he told Manthei he had a no-work restriction in place, but that Manthei scheduled him anyway. Similarly, the court will allow the plaintiff to proceed on an Eighth Amendment claim against Chef Brenda. The plaintiff states that he initially asked her if he could be free of the obligation to carry the trays at the end of his shift because of his knee pain, but she refused his request. The plaintiff then informed her that he was on a no-work restriction. After consulting the position sheet, she noted that the plaintiff was only on a light-activity restriction, and again declined his request to be free of tray duty. Given the plaintiff's representations and his complaints about knee pain, the court will allow the plaintiff to proceed on his claim that Chef Brenda was deliberately indifferent to his serious medical needs when she failed to do more to confirm his restrictions and address his complaints of pain.

11

The court also will allow the plaintiff to proceed on an Eighth Amendment claim against Willson, the food services manager. The plaintiff states that he told Willson about the no-work restriction, and that she said she would look into it, but that he still was scheduled to work. This is enough for the court to allow the plaintiff to proceed against Willson at this early stage. The court will allow the plaintiff to proceed against Willson in both her individual and official capacities, based on his allegations that there is an informal policy or practice of scheduling inmates to work despite no-work and light-activity restrictions being in place.

Although it is a close call, the court will allow the plaintiff to proceed against Sanchez based on his allegations that Sanchez refused to contact HSU despite the plaintiff stating that he was in a lot of pain and that his pain medication was not working. It appears that Sanchez responded quickly after the plaintiff fell, and investigated the plaintiff's claims that he was on a no-work restriction. Those actions suggest that Sanchez was not deliberately indifferent to the plaintiff's medical needs. The court acknowledges, however, that the plaintiff's fall might have been prevented had Sanchez not ignored the plaintiff's initial requests for medical attention. The court will allow the plaintiff to proceed with this claim.

Finally, the court will dismiss Lockhart as a defendant. The plaintiff alleges that Lockhart watched him fall and then laughed. If true, this was an insensitive response which likely was offensive to the plaintiff, but it does not violate the Constitution. The plaintiff explains that two inmates helped him to a

bench, and that Sanchez spoke to him to better understand what had happened. The plaintiff's needs were attended to, and there wasn't anything left for Lockhart to do. Laughing at someone who falls is insensitive, but it does not rise to the level of a constitutional violation.

## III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **ORDERS** that, under an informal service agreement between the Wisconsin Department of Justice and this court, copies of the plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on defendants Manthei, Willson, Chef Brenda and Sanchez.

The court also **ORDERS** that, under the informal service agreement between the Wisconsin Department of Justice and this court, defendants Manthei, Willson, Chef Brenda and Sanchez shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **DISMISSES** defendants Foster, Meli, Stoughton, Bozack, Kroll, Kibbel, Lockhart, Bauer, White and Kruger based on the plaintiff's failure to state a claim against them.

The court also **ORDERS** that the agency having custody of the prisoner shall collect from his institution trust account the $331.44 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the

prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff is transferred to another institution, county, state, or federal, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance to the receiving institution.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court further **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court.[1] If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

The court advises the plaintiff that failure to timely file documents may result in the dismissal of this case for failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court will mail a copy of this order to the officer in charge of the agency where the inmate is confined.

Dated in Milwaukee this 25th day of July, 2017.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**