UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER JONES,

                Plaintiff,

v.                                                 Case No. 17-cv-788-pp

AIMEE WILSON, *et al.*,

                Defendants.

---

**ORDER GRANTING DEFENDANTS RUFFIN AND BLOCK'S MOTIONS FOR SUMMARY JUDGMENT BASED ON PLAINTIFF'S FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES (DKT. NOS. 83, 88)**

---

      The plaintiff is a Wisconsin state prisoner who was representing himself when he filed his complaint under 42 U.S.C. §1983. On July 25, 2017, the court screened the plaintiff's complaint and allowed him to proceed on claims that four defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when they failed to follow a no-work restriction that had been entered by health services staff. Dkt. No. 9. In March 2018, the parties filed cross-motions for summary judgment. Dkt. Nos. 18, 22. On February 4, 2019, the court granted summary judgment in favor of two of the defendants. Dkt. No. 34. The court denied the plaintiff's summary judgment motion and denied defendants' summary judgment motion as to Aimee Wilson and Brenda Rilling. Id.

      Brian Spahn and Nicholas Bezier of the law firm Godfrey and Kahn SC subsequently agreed to represent the plaintiff on a *pro bono* basis. Dkt. Nos. 35, 36. On July 30, 2019, the plaintiff, by his lawyers, filed a motion for leave

1

to amend his complaint. Dkt. No. 48. The plaintiff sought to include claims against two new defendants: registered nurses Melissa Block and John Ruffin. Id. The court granted the motion on September 12, 2019. Dkt. No. 56. On April 3, 2020, Ruffin filed a summary judgment motion, asserting that the plaintiff had failed to exhaust his administrative remedies before he filed his lawsuit. Dkt. No. 83. On June 1, 2020, Block sought summary judgment on the same grounds. Dkt. No. 88.

## I. Facts

Under Civil Local Rule 56(b)(1)(C), a party moving for summary judgment must file "a statement of proposed material facts to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." As the plaintiff points out, neither Ruffin nor Block complied with this rule. The plaintiff filed a statement of undisputed facts in support of his response to Ruffin and Block's summary judgment motions. Dkt. No. 94. Neither Ruffin nor Block responded to that statement, despite Civil L.R. 56(b)(3)(B)'s requirement that they do so. Under Civil L.R. 56(b)(4), the court deems the plaintiff's statements of material fact admitted solely for the purpose of deciding summary judgment.

In early 2017, the plaintiff injured his right knee. Dkt. No. 94 at ¶1. The next day, he went to health services, where nurse J. Kaceyon placed him on a no-work restriction until March 1, 2017. Id. at ¶2. On March 1, the plaintiff saw nurse Block for a follow-up appointment. Id. at ¶3. Block extended the no-work restriction for another week—until March 8, 2017. Id. at ¶5. On March 8,

2

2017, the plaintiff saw nurse Ruffin for a follow-up appointment, at which time Ruffin extended the no-work restriction for a month (until April 8, 2017). Id. at ¶¶6-7.

Despite being on a no-work restriction, the plaintiff worked additional shifts in the kitchen. Id. at ¶8. On March 19, 2017, while carrying a heavy stack of food trays, the plaintiff's injured knee buckled and he fell. Id. at ¶9. A doctor at Waupun Memorial Hospital eventually determined that the plaintiff had torn the anterior cruciate ligament in his knee. Id. at ¶10.

Three days after the plaintiff injured his knee, he submitted an inmate complaint describing the events that led to his injury. Id. at ¶11; Dkt. No. 85-1. The inmate complaint is dated March 22, 2017 and has a date-received stamp of March 23, 2017. Dkt. No. 85-1. The complaint code (which presumably is entered by prison staff because it is in an "Office Use Only" section of the form) is marked as "10." Dkt. No. 85-1 at 1. Ruffin explains in his supporting brief that "10" identifies the subject of the grievance as falling under the category of "Work & School Programs." Dkt. No. 84 at 2.

The form instructs the inmate to "Answer the following questions in the spaces provided[.]" Dkt. No. 85-1 at 1. The first question on the form is: "Briefly state who or what is the **one** issue of this complaint?" Id. (emphasis in original). In the space provided, the plaintiff wrote: "I was on a **no** work restriction per H.S.U staff. WCI food service staff repeatedly forced me to come into the kitchen to work! While on light duty as well! I reinjured my right knee lifting trays." Id. (emphasis in original).

3

The second question on the form is: "Prior to submitting this complaint, how did you attempt to resolve your **one** issue and with whom?" Id. (emphasis in original). The plaintiff wrote:

> On 3-14-17 I spoke with food service supervisor Ms. Wilson to inform her about me having a <u>no</u> work restriction and still being called to work. I also talk to my ps[ych]ologist Ms. Van Buren and informed her of the situation. This took place on 3-16-17. Ms. Van Buren check[ed] her computer and verified I was telling the truth about my no work restriction. She then called L[i]eut[e]nant Keepers to inform him of the situation. L[i]eut[e]nant Keepers said he would inform food service of my restriction!

Id. (emphasis in original).

The third question on the form is: "What was the result of your attempt to resolve the **one** issue?" Id. (emphasis in original). The plaintiff wrote:

> Ms. Wilson told me that she would look into my restriction on 3-14-17. She informed me that H.S.U. usually never sends her copies of the restrictions. She also informed me that the restriction isn't always posted on the computer system "W.I.C.S.!! I was never off work from the day [my] restriction started from 3-9-17 to the day I was injured on 3-19-17. It wasn't until I injured myself that my restriction was acknowledged and being enforced.

Id.

The final question on the form is: "What are the details surrounding this complaint?" Id. The plaintiff wrote a detailed narrative of the events that concluded in his injuring his knee. Id. at 1-2. Most the narrative focuses on his interactions with corrections officers and kitchen staff on the day of the injury; however, there are a few references to his no-work restriction and health services sprinkled throughout the narrative. On those topics, the plaintiff

4

wrote, "I spoke with Chef Brenda and I informed her of my knee issues, and told her that I'm on a light duty restriction . . . ." Id. He also wrote, "I then told Chef Brenda I was on a no work restriction as well as a light duty restriction and all of the standing and lifting heavy trays is really causing my knee to ache. Chef Brenda then responded that according to the position sheet, I was only on light duty restriction . . . ." Id. Finally, the plaintiff wrote, "Before I took any steps I informed Chef Brenda and C.O. Lockhart that I was on no work restriction, as well as light duty restriction. Both did not respond." Id. at 2 (emphasis in original). In the final section of the form, captioned "Action Requested," the plaintiff wrote: "I would like all food service staff to be aware of all medical restrictions abide by them and aid and assist inmates who have injured themselves." Id.

The bottom of page two of the inmate complaint form has "Instructions For Completing the Inmate Complaint Form." Id. The instructions state, in part, "You must speak with appropriate staff in an effort to informally resolve your issue before filling out the form." Id. The form also says that inmate complaints must "contain only one issue per complaint, and shall clearly identify the issue." Id.

On March 29, 2017, James Muenchow, the inmate complaint examiner, processed the plaintiff's inmate complaint. Dkt. No. 94 at ¶18. After recounting the results of his investigation, Muenchow recommended that the plaintiff's inmate complaint be affirmed with modification. Id. at ¶22. He recommended that the plaintiff's inmate complaint be forwarded to Aimee Wilson (the food

5

services administrator) and Lieutenant Keith Immerfall to further investigate why the plaintiff was working despite being on a no-work restriction. Id. A couple of days later, Warden Brian Foster adopted Muenchow's recommendation and affirmed the grievance with the recommended modification. Id. at ¶23.

The plaintiff appealed Foster's decision. Id. at ¶24. In the appeal, the plaintiff complained that Muenchow had not investigated why the plaintiff had been required to work despite his warnings to staff. Id. at ¶27. He also objected to the modification, indicating that both Wilson and Immerfall knew, or should have known, about his no-work restriction "because it was sent to them by H.S.U.!" Id. On April 27, 2017, Cindy O'Donnell, then a representative with the Office of the Secretary of the Department of Corrections, accepted the Corrections Complaint Examiner's recommendation to affirm the grievance with modification. Id. at ¶¶28-29.

## II. Discussion

### 1. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute

6

over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

2.   Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides in part that "[n]o action shall be brought with respect to prison conditions under § 1983. . . by a prisoner. . . until such administrative remedies as are available are exhausted." 42 U.S.C §1997e(a). The exhaustion rule gives prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court, and it produces a "useful administrative record" for the district court to rely on. Jones v. Bock, 549 U.S. 199, 204 (2007) (citing Woodford v. Ngo, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency because agencies generally resolve claims much faster than federal courts. Woodford, 548 U.S. at 89. A district court "lacks discretion to resolve the claim on the merits" if the prisoner fails to properly exhaust administrative remedies. Perez v. Wis. Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999).

The Seventh Circuit "has taken a strict compliance approach to exhaustion." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner must "properly use the prison's grievance process" prior to filing a case in federal court. Id. "[A] prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). "[I]t is the prison's requirements . . . that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218.

To exhaust administrative remedies through Wisconsin's Inmate Complaint Review System (ICRS), an inmate first must file an inmate complaint with the inmate complaint examiner within fourteen calendar days of the event giving rise to the complaint. §310.09(6).[1] The complaint must "contain only one issue per complaint, and shall clearly identify the issue." §310.09(1)(e). An inmate complaint sufficiently identifies the issue if it "alerts the prison to the nature of the wrong for which redress is sought." Strong v. David, 297 F.3d 646, 560 (7th Cir. 2002). "The grievant need not lay out the facts, articulate legal theories, or demand particular relief." Id. The inmate complaint does not need to name all names, or lay out every possible legal theory. Wine v. Pollard, No. 08-CV-173-BBC, 2008 WL 4379236, at *2 (W.D. Wis. Sept. 23, 2008). But the complaint must "alert[] the prison to the nature of the wrong." Id. at 3.

3.  Analysis

Ruffin and Block both argue that they are entitled to summary judgment because the plaintiff failed to exhaust the available administrative remedies before he filed this lawsuit.[2] They assert that the plaintiff did not file an inmate complaint about their (or health services') alleged failure to communicate to food services that the plaintiff was on a no-work restriction. They argue that the only wrong the plaintiff complained of in his inmate complaint was that

---

[1] On April 1, 2018, a new version of Wis. Admin. Code §DOC Ch. 310 went into effect, affecting the numbering of various provisions. For purposes of this decision, the court refers to the Register, December 2014 version, which was in effect at the time of the events described in the complaint.

[2] Block makes other arguments. The court need not reach those because it agrees that the plaintiff did not exhaust his remedies as to Block.

8

food service staff had forced him to work despite his being on a no-work restriction. The court agrees with the defendants that the plaintiff did not file an inmate complaint clearly identifying health services' alleged failure to communicate his no-work restriction as the issue of his inmate complaint.

The complaint form instructs inmates that they may complain about only one issue per complaint and that they must clearly identify the issue about which they are complaining. The first and second questions on the form also emphasize that an inmate may complain about only "**one** issue." Ruffin and Block argue that food services ignoring the plaintiff's no-work restriction is one issue and health services failing to communicate his no-work restriction is another—that is *two* issues, not one. While the issues are related, they involve different departments, different responsibilities and different staff members. The defendants argue, and the court agrees, that complaining about both issues in a single inmate complaint likely would have violated the instructions on the form.

More to the point, the focus of the complaint was the plaintiff's concern about the failures of the *food service* staff. In the few instances he references health services, he does so only to provide context for his complaints about food services. In the section asking him to briefly state his one issue, the plaintiff wrote, "I was on a no work restriction per H.S.U. staff. WCI food service staff repeatedly forced me to come into the kitchen to work! While on light duty as well! I reinjured my right knee lifting trays." Dkt. No. 85-1 at 1. While he mentioned that the health services staff had put him on the no-work

9

restriction, he made no allegations against them. In contrast, he alleged that the food service staff "forced" him to come to work.

The second question asks the inmate to describe the efforts he made to informally resolve his one issue. The first person the plaintiff says he talked to was Wilson, the food services supervisor; he told her about the no-work restriction. The second person he talked to was his psychologist; she confirmed that health services had entered the no-work restriction in the WICS database. The plaintiff states that his psychologist told a lieutenant, who represented that he also would inform food services of the no-work restriction. The plaintiff made no complaint against the psychologist or the health services unit, and from what he stated, he'd have no reason to do so.

The plaintiff did not state that he talked to *anyone* in health services about whether or why they did not communicate the no-work restriction to food services. It appears, then, that he made no effort to informally resolve any issue over health services' alleged communication failure before filing his inmate complaint.

The plaintiff points out that in the space where he was asked to describe the results of his attempt to resolve the issue, he stated that Wilson told him that "H.S.U. usually never sends her copies of the restrictions" and that "the restriction isn't always posted on the computer system W.I.C.S." The plaintiff did not allege, however, that Wilson said that health services had not sent her a copy of *the plaintiff's* no-work restriction. She told the plaintiff that H.S.U. "usually" did not send her copies, and that restrictions were not always posted,

10

and said that she would look into it. Given the plaintiff's assertion that his psychologist had told him that health services *had* posted his restriction on WICS, a person reading the inmate complaint could conclude only that the plaintiff was complaining about food services' (Wilson's in particular) laissez-faire attitude toward his no-work restriction, and not that health services had failed to communicate his restriction.

Finally, when the warden adopted the inmate complaint examiner's recommendation that the inmate complaint be forwarded to Wilson and a lieutenant for further investigation, the plaintiff registered his disagreement. He noted that both "knew or should have known" about the no-work restriction "because it was sent to them by H.S.U.! Therefore, there is nothing to investigate!!" Dkt. No. 85-3. Rather than complaining that health services (or Ruffin or Block) failed to communicate his restriction to food services, the plaintiff himself was asserting that health services *had* communicated the restriction.

So—three weeks *after* the plaintiff filed his inmate complaint, he was under the impression that health services had sent his no-work restriction to food services. It makes no sense that the plaintiff would have complained about health services failing to communicate the no-work restriction in his inmate complaint if he believed they *had* communicated the no-work restriction. Perhaps the plaintiff learned later that health services had not routed a paper copy of the no-work restriction to food services (though they did enter it into WICS). Perhaps he could have filed an inmate complaint at that point,

11

explaining that he had good cause for the delay because he had only recently learned about health services' failure to communicate. But the language of the original inmate complaint cannot be read to address an issue that it appears the plaintiff did not know existed at the time he wrote the inmate complaint.

Because the plaintiff did not file an inmate complaint alerting his institution that he believed that health services (or Ruffin or Block) had not communicated the no-work restriction to food services, he did not exhaust the available administrative remedies as to his claim against Ruffin and Block. Ruffin and Block are entitled to summary judgment.

This means that the case is in a trial posture as to defendants Aimee Wilson and Brenda Rilling. The court will schedule a status conference to discuss next steps. The court notes, however, that while it and the other judges in the Eastern District are scheduling trials, the question of whether it is safe for the trials to proceed given the on-going pandemic depends on the case. It is easier for the court to mitigate risk for a bench trial than for a jury trial. It is easier for the court to mitigate risk for a one- to two-day trial than for a week-long trial. Trials require more advanced planning than they did before the pandemic, and there is always the risk that a party, lawyer, juror or member of the court's staff may be exposed or infected, requiring an adjournment or suspension of the trial.

The court urges the parties to consider negotiating, including considering participating in mediation with one of the U.S. Magistrate Judges. All five magistrate judges in the Eastern District are conducting mediations via

videoconference. If the parties would like the court to refer the case to a magistrate judge for mediation, they need only file a joint request, or even call chambers with both parties on the line and ask for the referral.

## IV. Conclusion

The court **GRANTS** defendants Ruffin's and Block's motions for summary judgment based on failure to exhaust. Dkt. Nos. 83, 88.

The court **ORDERS** that defendants Ruffin and Block are **DISMISSED** from this case.

The court **SETS** a counsel-only status conference for December 8, 2020 by phone. The parties are to appear by calling the court's conference line at 888-557-8511 and using access code 4893665#.

Dated in Milwaukee, Wisconsin this 6th day of November, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**